UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMUEL JEROME,

      Plaintiff,

                                   Case No. 15-12302

v.

                                   Hon. John Corbett O'Meara

LIEUTENANT MICHAEL CRUM, in his
individual and representative capacity,
and the CITY OF BERKLEY, a
municipal entity,

      Defendants.

_____/

**OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendants' motion for summary judgment. The court

held oral argument on July 7, 2016, and took the matter under advisement. For the

reasons explained below, Defendants' motion is granted.

**BACKGROUND FACTS**

Plaintiff Samuel Jerome filed suit against Lieutenant Michael Crum and the

City of Berkley, alleging federal claims of false arrest and imprisonment, malicious

prosecution, a violation of due process, and municipal liability. Defendants seek

summary judgment on Plaintiff's claims, arguing that Crum is entitled to qualified

immunity.

On May 7, 2013, Alyxis ("Allie") Krahe, then thirteen years old, was brought to the Berkley Police Station by her grandmother, Judy Stiltner.  Allie alleged that her stepfather, Plaintiff Jerome, had sexually abused her.  According to Allie, Jerome had started by rubbing her stomach, then touched her vagina on two occasions and her breasts on the second occasion.  As the investigating officer, Defendant Crum obtained basic information from Allie, prepared a report, and referred her to Care House for a forensic interview.

Jerome also came to the police station on May 7, 2013, to speak to Crum. Jerome admitted that he rubbed Allie's stomach, but denied the inappropriate touching.  He agreed to submit to a polygraph examination on May 21, 2013.

On May 16, 2013, Allie was taken to Care House by her mother, Stacey Krahe.  Allie essentially recanted her allegations of abuse, stating that when Jerome rubbed below her hip bones near her pubic line, she asked him to stop and he did; she also stated that he touched her breast accidentally.

On May 20, 2013, Jerome notified Crum that he would not take the polygraph examination.  On June 9, Crum asked Allie's mother if he could meet with Allie to discuss the change in her story.  Stacey refused, stating that Allie had admitted that she had made up the allegations and that the family did not want any

further police involvement.

On July 11, 2013, Allie's grandmother Judy Stiltner brought Allie to the Berkley Police Station. They informed Crum that Stacey was hospitalized in Texas as a result of mental illness, that Stiltner was Stacey's legal guardian, and Stiltner gave Crum permission to discuss the case with Allie. Allie told Crum that her mother made her change her story at Care House. Stacey allegedly told Allie that if she continued with her allegations against Jerome, Allie would be placed in a foster home and raped daily. Stacey also allegedly threatened to commit suicide. Allie stated that her original description of the two incidents was the truth and that she was fearful that her younger sister Sabrina would also be sexually assaulted by Jerome. She stated that she had changed her story at Care House as a result of her mother's threats.

On July 14, 2013, Stacey was scheduled to return home from her hospitalization in Texas. According to the police report, Stacey called Allie and threatened her with "severe consequences for ruining the family." Allie then ran away from her grandmother's home, where she had been staying. A runaway report was filed.

On July 15, 2013, Stacey informed the Berkely police that she had found Allie. Officers asked to see Allie so that they could confirm her return. In

-3-

response, Stacey sent officers on a wild goose chase, first saying she had taken Allie to Beaumont Hospital (but when officers arrived, they were not there), then Providence Hospital (they were not there), and then stating that she was on the road to Georgia for a "fresh start." See Defs.' Ex. A.

On August 2, 2013, police were called to the Jerome residence as a result of a domestic disturbance. Allie had been physically assaulted by both her mother and Plaintiff, sustaining injuries that were witnessed by the responding police officers. As a result of this incident, both Plaintiff and Stacey were arrested for domestic violence. Defs.' Ex. C.

On August 6, 2013, Crum forwarded the domestic violence case to the Oakland County Prosecutor's office for consideration. The prosecutor decided to pursue the case against Jerome, but not against Stacey because Stacey was anticipated to be a witness in the criminal sexual conduct case against Jerome.

On August 9, 2013, Crum forwarded the criminal sexual conduct case against Jerome to the prosecutor's office. On August 21st, the prosecutor requested further information and provided specific questions for Crum to answer. On that date, Judy Stiltner arrived at the police station (before Crum could contact her) with Allie and Sabrina. Crum interviewed all three witnesses to obtain the information requested by the prosecutor.

In his report, Crum stated that Allie "described the first incident exactly as she had on May 7, 2013 in my office. She recalled Sam rubbing her vagina on the exterior of her clothing. . . . Allie recalled the second incident of sexual assault exactly as she had on May 7, 2013. . . . She recalled Sam pinning her down and coming in direct contact with her vagina, including penetration." Defs.' Ex. A. Allie also reiterated that she had changed her story at Care House as a result of threats from her mother.

On September 18, 2013, the Oakland County Prosecutor obtained an arrest warrant for Jerome from the Honorable James Wittenberg.  Pursuant to the warrant, Crum arrested Jerome, who was taken to the Oakland County Jail.

On October 9, 2013, Jerome's preliminary exam was held before Judge Wittenberg.  At the hearing, Allie testified to the two incidents of inappropriate touching and was cross-examined by Jerome's defense attorney.  Crum did not testify.  Based upon Allie's testimony, Judge Wittenberg found probable cause and bound the matter over to circuit court for trial on the criminal sexual conduct charges.  Jerome's $500,000 bond was continued and he remained in jail.

Jerome's criminal trial started on August 4, 2014, and continued on August 5 and 7, 2014, before the Honorable Rudy Nichols.  Defendant Crum testified on August 5 and 7.  Pertinent to this matter, Crum testified that it was his

department's practice not to video record interviews of sexual assault victims, and that he had not video recorded any of his interviews with Allie.

After he testified, Crum learned that the video recorder had been turned on during his August 21, 2013 interviews of Allie, Sabrina, and Judy Stiltner.  On August 8, 2014, Crum notified the prosecutor and produced disks of the recordings.  The court declared a mistrial and reduced Jerome's bond to $1,000, so that he could be released from jail.  Subsequently, the prosecutor decided not to re-try Jerome; an order of nolle prosequi was entered on October 6, 2014.

## LAW AND ANALYSIS

### I.    Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  When reviewing a motion for summary judgment, the facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The party opposing summary judgment, however, must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find in favor of the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## II.   <u>Qualified Immunity</u>

Crum contends that he is entitled to qualified immunity.  In determining whether a defendant is entitled to qualified immunity, the initial inquiry is as follows: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  <u>Id.</u> at 201-202.

### A.   <u>False Arrest and Imprisonment</u>

With this standard in mind, the court considers whether Crum violated Jerome's constitutional rights in seeking an arrest warrant.  "A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff."  <u>Voyticky v. Village of Timberlake, Ohio</u>, 412 F.3d 669, 677 (6th Cir. 2005).  "An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to § 1983."  <u>Id.</u>  To prevail on this claim,

-7-

plaintiff must show that in order to procure the warrant, Crum "knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that create[d] a falsehood and such statements or omissions [we]re material, or necessary, to the finding of probable cause." Sykes v. Anderson, 625 F.3d 294, 305 (6th Cir. 2010). "If the affidavit contains false statements or material omissions, we set aside the statements and include the information omitted in order to determine whether the affidavit is still sufficient to establish probable cause." Id.

### B.    Malicious Prosecution

As with false arrest and imprisonment, "[i]n order to prove malicious prosecution under federal law, a plaintiff must show, at a minimum, that there is no probable cause to justify an arrest or a prosecution." Voyticky, 412 F.3d at 675. The plaintiff must show that a criminal prosecution was initiated and that (1) the defendant made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause; (3) the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the prosecution was resolved in the plaintiff's favor.  Sykes, 625 F.3d at 308-309.  "A police officer violates a suspect's clearly established right to freedom from malicious prosecution under the Fourth Amendment 'only when his deliberate or reckless falsehoods result in arrest and

-8-

prosecution without probable cause.'" <u>Johnson v. Moseley</u>, 790 F.3d 649, 655 (6th Cir. 2015).

Plaintiff contends that Crum's account of Allie's August 21 interview in his report to the prosecutor mischaracterized what actually appeared on the video of the interview. <u>See</u> Pl.'s Br. at 10-11. Plaintiff notes several inconsistencies between what Allie told Crum on May 7 and what Allie told Crum on August 21. <u>See</u> <u>id.</u> Crum did not point out these inconsistencies on August 21, but rather stated in his report that Allie described both incidents "exactly" as she had on May 7. <u>See</u> Defs.' Ex. A at 12.

For example, on May 7, Allie stated that Plaintiff touched the outside of her clothing during the first incident. On August 21, she told Crum that Plaintiff touched her on the outside and underneath her clothing. On May 7, Allie told Crum that Plaintiff held her down with his free hand; she did not mention that on August 21. On May 7, Allie told Crum that Plaintiff did not say anything during either assault; on August 21, she said that he did. On May 7, she told Crum that Plaintiff sat next to her during the second assault; on August 21, she told Crum that Plaintiff sat on her legs. <u>See</u> Pl.'s Br. at 10-11. On May 7, Allie "described [Plaintiff's] fingers as inserted between her 'lips.' She advised that he did not insert his fingers inside of her but definitely spread her lips apart with his fingers."

Def.'s Ex. A at 6.  On August 21, Allie stated that Plaintiff did insert his finger inside her, "not real far."  Pl.'s Ex. E.

These inconsistences, while relevant to Allie's credibility and to whether the prosecutor could meet its ultimate burden, do not defeat probable cause.  See Johnson, 790 F.3d at 655 (inconsistencies in domestic assault allegations "give cause to question the accuracy" and "credibility" of the complainant, but "the alleged inconsistencies cannot reasonably be deemed to compel the conclusion that probable cause had ceased to exist").  See also Lyons v. City of Xenia, 417 F.3d 565, 575 (6th Cir. 2005) ("In ascertaining whether a constitutional violation occurred, the only question is whether Officer Keith had probable cause – not whether the evidence would be sufficient to support a conviction.").

Further, Crum's omission of the inconsistencies in his report was not material to the finding of probable cause.  In finding probable cause at the preliminary examination on October 9, the judge relied solely upon Allie's testimony, not Crum's report.  Crum did not testify at the preliminary examination.  Moreover, Allie testified at the preliminary examination in a manner *consistent* with her interview with Crum on August 21.  See Def.'s Ex. D (preliminary exam transcript) at 12-15, 18-20.  Regarding the first incident, she testified that Plaintiff touched her "kind of both" under and over her pants and asked "why?" when she

-10-

asked him to stop.  Id. at 13-15.   Regarding the second incident, she testified that

Plaintiff sat on her legs.  She answered "yeah" when the prosecutor asked "and you

said his fingers actually went inside you this time?" Id. at 18-20.  To the extent this

October 9 testimony was inconsistent with what Allie told Crum on May 7, both

Plaintiff's defense counsel and the prosecutor had Crum's report and the

opportunity to explore those inconsistencies at the preliminary examination.

Viewing the totality of the circumstances – including Allie's statement and

her explanation of recanting her allegations at Care House – Crum had probable

cause to forward the case to the Oakland County prosecutor.  Any inconsistencies

between Allie's accounts of the alleged abuse were known to the prosecutor and

defense attorney as of the time of the preliminary exam, yet the judge found

probable cause based upon Allie's testimony.  If the August 21 video had been

available at the preliminary exam, Plaintiff cannot show that it would have

changed the judge's finding of probable cause.

Because there was probable cause to prosecute Plaintiff, he cannot prevail on

his false arrest or malicious prosecution claims.  Crum reasonably believed that he

had sufficient probable cause to submit the case to the prosecutor.  Because the

court cannot conclude that Crum acted with reckless disregard for the truth, he is

entitled to qualified immunity.  See Ahlers v. Schebil, 188 F.3d 365, 373 (6th Cir.

1999).

### III.   <u>Due Process</u>

Plaintiff alleges that Crum violated his due process rights by failing to turn over the potentially exculpatory August 21 video as required by <u>Brady v. Maryland</u>.  Crum testified that he was unaware that his interviews with Allie, Sabrina, and Judy Stiltner had been recorded on August 21.  Once he was aware that the video existed, he turned it over to the prosecutor, who made defense counsel and the court aware of its existence.  The court declared a mistrial.  Subsequently, the prosecutor chose not to re-try Plaintiff.

The elements of a <u>Brady</u> due process claim are as follows: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  <u>Strickler v. Greene</u>, 527 U.S. 263, 281–82 (1999).  Here, Plaintiff cannot demonstrate prejudice because his criminal proceedings resolved in his favor.  <u>See</u> <u>Offineer v. Kelly</u>, 454 Fed. Appx. 407, 419 (6th Cir. 2011) ("Cases from this court confirm that due process claims based upon the wrongful suppression of exculpatory evidence are unavailable where, as here, the claimant was acquitted of his criminal charges.").

-12-

IV.    **Municipal Liability**

Because Plaintiff has not demonstrated that Crum violated his constitutional

rights, he also cannot show municipal liability on the part of the City of Berkley.

See Voyticky, 412 F.3d at 679 ("For municipal liability to exist, however, a

constitutional violation must take place.").  The court will grant summary

judgment in favor of Defendants.

## ORDER

IT IS HEREBY ORDERED that Defendants' motion for summary judgment

is GRANTED.

s/John Corbett O'Meara
United States District Judge

Date:  August 25, 2016


I hereby certify that a copy of the foregoing document was served upon
counsel of record on this date, August 25, 2016, using the ECF system.

s/William Barkholz
Case Manager

-13-